Kenneth L. Cannon II (3705)
Penrod W. Keith (4860)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P O Box 4050
Salt Lake City, UT  84110-4050
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
Email:  kcannon@djplaw.com
         pkeith@djplaw.com

Attorneys for the Cornerstone Industries, Inc.,
     Debtor and Debtor in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>CORNERSTONE INDUSTRIES, INC.,<br><br>    Debtor. | Bankruptcy Case No. 15-26366<br><br>Chapter 11<br><br>Honorable William T. Thurman |

### DEBTOR'S MOTION FOR ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS IN CONNECTION WITH THE DEBTOR'S PLAN OF REORGANIZATION, APPROVING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, APPROVING BIDDING PROCEDURES AND OTHER PROCEDURES WITH RESPECT TO THE SALE AND THIS MOTION, AND GRANTING RELATED RELIEF

Cornerstone Industries, Inc. (the "Debtor") hereby submits its motion (the "Motion") for

an Order, pursuant to sections 105(a) and 363(b), (f), and (m), and 365 of title 11 of the United

States Code (the "Bankruptcy Code") and rules 2002, 6004, 6006, and 9014 of the Federal Rules

of  Bankruptcy Procedure (the "Bankruptcy Rules"), approving (1) the sale of substantially all of

its assets of the Debtor (the "Assets"), (2) the assumption and assignment of certain contracts and

leases of the Debtor (the sale of Assets and assumption and assignment of contracts and leases

will be referred to as the "Sale"), (3) procedures related to the proposed sale and assumption and assignment, including bidding procedures for competing bids, auction procedures and an auction, and (4) granting related relief, as set forth below.  In support of this Motion, the Debtor respectfully states as follows:

## Case Information and Jurisdiction

1.      Case Information.  The Debtor commenced this case under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), by filing a voluntary petitions on July 8, 2015.  No creditors' committee, trustee, or examiner has been appointed in the Debtor's case.

2.      Jurisdiction, Venue, and Core Proceeding.  This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (D), and (O) and the Court has jurisdiction to enter a final order.

3.      Debtor Operating as Debtor in Possession.  The Debtor continue to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## Relief Requested

4.      Approval of the Sale and Related Procedures.  By this Motion, and pursuant to Bankruptcy Code sections 105(a) and 363(b), (f), and (m), and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9014, the Debtor requests approval of its sale of substantially all of its Assets and the assumption and assignment of certain executory contracts and unexpired leases.

5.    <u>Sale in Connection with the Debtor's Plan</u>.  The Debtor has filed its Plan of

Reorganization dated March 18, 2016 (the "<u>Plan</u>") and a related Disclosure Statement (the

"<u>Disclosure Statement</u>").  Hearing on the adequacy of the Disclosure Statement is scheduled for

May 4, 2016.  The Debtor's Plan is to be funded by the sale of substantially all of its assets.  The

Debtor seeks to have hearings on the Disclosure Statement and on initial approval of this Motion

at the same time, on May 4, 2016.  The Debtor then seeks to have the sale process concluded and

to have final approval of the sale, including the prevailing purchaser and the terms of sale,

approved at the hearing on confirmation of the Plan.

<b><u>The Debtor's Business</u></b>

The Debtor owns the surface rights to real property in fee simple located in Iron County,

Utah (the "<u>Real  Property</u>") and is the lessee under two mineral leases on the same property with

the Utah School and Institutional Trust Lands Administration (the "<u>SITLA Leases</u>").  It is also

the mine claimant under numerous mining claims with the United States Bureau of Land

Management (the "<u>BLM Mining Claims</u>").  The Real Property, SITLA Leases, and BLM Mining

Claims as well as other personal property owned by the Debtor will be referred to as the

"<u>Assets</u>."  Much of the testing and analysis of samples taken from the Debtor's ore stockpile

located on its property has been completed by Mercy Mountain Metals, Inc. ("<u>Mercy Mountain</u>")

pursuant to a good faith operating agreement between the Debtor and Mercy Mountain dated

July 8, 2013 (the "<u>Mercy Mountain Agreement</u>").  Mercy Mountain has also developed a

successful pilot plant to extract precious metals from the Debtor's ore.

The Debtor has received mixed test results from experts on the value of the precious

metals that could be extracted from the Debtor's SITLA Leases and BLM Mining Claims.  One

expert, whom the Debtor has been unable to locate for the past nine months, found that the ore

owned by the Debtor was very rich in precious metals and, if an efficient and economical process

to remove the precious metals could be developed, the ore could be extremely valuable.  A later

expert retained to testify for the Debtor found significantly lower precious metal content in the

Debtor's ore, such that the value of the ore and related SITLA Leases and BLM Mining Claims

could be in the low hundreds of thousands of dollars in value rather than the millions.

     The Debtor has had no funds with which to operate its business and owes Mercy

Mountain several million dollars for its services under the Mercy Mountain Agreement.  The

Court has given interim approval for a debtor in possession loan (the "DIP Loan") to the Debtor

and final hearing on the DIP Loan will be held on May 4, 2016.  The full amount of the DIP

Loan is $100,000.

### The Proposed Sale

     6.    Introduction.  The Debtor has negotiated a Stalking Horse Agreement with One

Smooth Stone, Inc. ("One Smooth Stone") by which substantially all of the Debtor's Assets will

be sold free and clear of liens and its important contracts and leases will be assumed (with

required cure obligations) and assigned for $3,000,000 (the "Purchase Price").  The Purchase

Price will be paid by One Smooth Stone over a period not to exceed twelve months.  The

payment obligation by One Smooth Stone will be represented by a promissory note (the "Note").

As set forth in the Stalking Horse Agreement, transfer documents will be signed and deposited

into escrow at closing.  Existing liens and other encumbrances on the Debtor's Assets will

remain in place until the full Purchase Price is paid, at which time the transfer documents will be

released from escrow and recorded.  Payments under the confirmed Plan will reduce the amounts

owed to holders of Allowed Secured Claims during the interim.  When the Purchase Price is

satisfied, the Court's Order authorizing the sale of the Debtor's Assets free and clear of liens and

other encumbrances will also be recorded.  The full amount of the Purchase Price is sufficient to

pay Secured Claims in full and to provide a substantial recovery to holders of general unsecured

claims.  The offer by One Smooth Stone is subject to higher and better offers, and, if a higher

and better offer is received, an auction will be held, as proposed and set forth below.

      7.   <u>The Sale Process</u>.  By this Motion, the Debtor seeks authority sell substantially all

of its Assets.  The Debtor has determined in the exercise of its business judgment that a

successful sale of substantially all of its Assets pursuant to this Motion and the Plan is the best

way to maximize the value of the Debtor's estate.  There is no general market for assets such as

the Debtor's assets and most marketing is by word of mouth.  The Debtor understands that its

secured creditors discussed the possible sale of the Assets to other parties and the Debtor

welcomes interested parties to participate in the sale process.

      a.   <u>Information</u>.  The Debtor will provide information regarding its Real

Property, copies of the SITLA Leases, BLM Mining Claims, and other relevant

information regarding its assets, as well as testing result information it has received to

any party interested in purchasing its Assets.  The test results are inconsistent, with some

indicating that the value of the Debtor's Assets could be tens of millions of dollars and

others indicating that the value of the Debtor's Assets could be a few hundred thousand

dollars, assuming an economic means of extracting precious metals from its ore could be

developed.

b.      Stalking Horse Agreement.  The Debtor and One Smooth Stone have

negotiated the asset purchase agreement attached hereto as **Exhibit A** (the "Stalking

Horse Agreement").  This Motion requests that One Smooth Stone be approved as the

Stalking Horse Bidder for the Debtor's Assets in accordance with the procedures set forth

below.  The Debtor believes that the Stalking Horse Agreement is a good form to use as

the base form for potential competing offers, although it contemplates payment of the

purchase price over a period of time and a competing offeror may want to offer full

payment at closing.  This and other appropriate changes to the Stalking Horse Agreement

could be made quite easily as the form is relatively simple and straightforward.

c.      The Proposed Bidding Process.  The Debtor anticipates that its Assets will

be sold in a single sale.  In connection therewith, the Debtor request that the Court

approve the following bid procedures (for which the Debtor will seek approval in the

Bidding Procedures Order, the proposed version of which is attached hereto as

**Exhibit B**:

*Provisions Governing Qualifications of Bidders and Bids*

- Initial Bids. Any third party (other than the Stalking Horse Purchaser) that is
  interested in acquiring the Assets must be a Qualified Bidder who submits an
  "Initial Bid" in conformance with the following procedures at or prior to the date
  set forth in the Bidding Procedures Order, (the "Bid Deadline").  For the purposes
  of the Bidding Procedures, the proposed purchase by One Smooth Stone shall be
  deemed to be a Qualified Bid. For any Initial Bid to constitute a Qualified Bid,
  such Initial Bid must be received by the Bid Deadline and:

  a)      contain a signed definitive asset purchase agreement (together with a copy
          of the signed agreement that is marked to show changes from the Stalking
          Horse Agreement) (a "Qualified APA") and identifying the Assets the
          party seeks to purchase with, at a minimum, the following requirements:
          (i) having substantially identical terms and conditions as the Stalking
          Horse Agreement, except that payment of the purchase price may be in a

lump sum at closing, with higher and better consideration,; (ii) containing terms and conditions no less favorable to Debtor's estate than the terms and conditions in the Stalking Horse Agreement, as applicable (provided that no Initial Bid shall provide for the payment to the bidder of any breakup fee, topping fee, expense reimbursement, or other similar arrangement); (iii) providing for a purchase price equal to or greater than the Stalking Horse Agreement purchase price; and (iv) not being subject to any (a) financing contingency, (b) contingency relating to the completion of unperformed due diligence, (c) contingency relating to the approval of the bidder's board of directors or other internal approvals or consents, or (d) any conditions precedent to the bidder's obligation to purchase the Assets other than those included in the Stalking Horse Agreement;

b)     To the extent not previously provided to Debtor, the Initial Bid must be accompanied by evidence satisfactory to Debtor in its commercially reasonable discretion the that the bidder is willing, authorized, capable, and qualified financially, legally, and otherwise, of unconditionally performing all obligations under the Qualified APA (or its equivalent) in the event that it submits the Successful Bid (as defined below) at the Auction (as defined below);

- <u>Evaluation of Competing Bids</u>. The Bidding Procedures set forth various factors that would be considered by the Sellers in evaluating each Qualified Bid.

- <u>No Qualified Bids</u>. If the Seller does not receive any Qualified Bids other than the one from One Smooth Stone, the Auction shall be cancelled and the Debtor shall report the same to the Bankruptcy Court. In such circumstances, the Debtor shall promptly proceed to seek entry of the appropriate Order approving the sale to One Smooth Stone pursuant to the terms and conditions set forth in the Stalking Horse Agreement.

*The Notice Procedures*

- <u>Notice of Auction and Sale Hearing</u>. After entry of the Bidding Procedures Order (as defined below), the Debtor will cause a Notice of Auction and Sale Hearing, to be served by first-class mail, postage prepaid, facsimile, electronic transmission, hand-delivery or overnight mail upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Assets during the past twelve (12) months, (ii) the Office of the United States Trustee, (iii) all non-debtor parties to relevant contracts or leases (executory or other), (iv) all known creditors of the Debtor, including all known persons asserting a lien, claim, encumbrance, or other interest in, to or against any of the Debtor's assets, and (viii) all parties who have requested service pursuant to Bankruptcy Rule 2002.  In addition, the Debtor will distribute a copy of the Bidding Procedures

Order and the Notice of Auction and Sale Hearing to all parties the Debtor have determined, in its discretion, qualify as a potential bidder based primarily upon likely interest in the assets and financial ability to consummate the Sale (the "Qualified Parties").

*The Auction*

- Auction. In the event that the Debtor timely receives a conforming Initial Bid from a Qualified Bidder, then Debtor will conduct an auction (the "Auction") currently proposed to start on the next business day following the deadline for initial bids with respect to the Sale of the Assets at the time and place set forth in the Bidding Procedures Order. In order to participate in the Auction, each prospective purchaser must be a Qualified Bidder and shall be required to comply with the requirements of the Bidding Procedures and to submit an Initial Bid that is timely and that complies in all respects with the Bidding Procedures. At the Auction, Qualified Bidders may submit successive bids in increments of at least $25,000.00 greater than the prior bid (the "Incremental Bid Amount") for the purchase of the Assets until there is only one offer that Debtor determines, subject to Bankruptcy Court approval, is the highest and/or best offer (the "Successful Bid"). If no conforming Initial Bid from a Qualified Bidder shall have been received at or prior to the Bid Deadline, the Auction will not be held and the Sale Hearing will proceed with confirmation of the Plan with respect to the Stalking Horse Agreement, if applicable. All bids made at the Auction shall remain open until the earlier of the end of the second business day following the closing of the transaction and fifteen (15) days after the entry of an order by the Court approving a definitive agreement providing for the Sale of the Assets;

- Highest and/or Best Bid. At all times during the Proposed Sale Process, the Debtor shall retain full discretion and right to determine, in its sole discretion after consultation with its major secured creditors, which bid constitutes the highest or otherwise best offer for the purchase of the Assets, and which bid should be selected as the Successful Bid, if any, all subject to final approval by the Court pursuant to the provisions of section 363(b) of the Bankruptcy Code. Without limiting the generality of the foregoing, the Debtor may, at any time before entry of an order of the Court approving a Successful Bid, reject any bid that, in the Debtor's sole discretion, the Debtor determines (i) inadequate or insufficient, (ii) contrary to the requirements of the Bankruptcy Code or the Proposed Sale Process, or (iii) contrary to the best interests of the Debtor, its estates or its creditors. The Debtor may adopt rules for the Auction that, in its judgment, will better promote the goals of the Auction and that are not inconsistent with any of the other material provisions hereof or of any Court order.

*The Sale Hearing*

- <u>Sale Hearing</u>. The Debtor intends to present the Successful Bid for approval by the Court pursuant to the provisions of sections 105, 363(b), 363(f), 363(m), 363(n), and 365 of the Bankruptcy Code at the final hearing to approve the Sale Motion (the "<u>Sale Hearing</u>") (which they intend to have heard in connection with confirmation of the Plan). The Debtor shall be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing. Upon the failure to consummate a Sale of the Assets after the Sale Hearing because of the occurrence of a breach or default by the proposed purchaser under the terms of the Successful Bid, the next highest or otherwise best bid, if any, as disclosed at the Sale Hearing, shall be deemed the Successful Bid without further order of the Court and the parties shall be authorized to consummate the transaction contemplated by the backup Successful Bid (to the extent the party that submitted such backup Successful Bid is willing to serve as a backup bidder).

- <u>Sale Implementation</u>. Following the approval of the Successful Bid at the Sale Hearing, the Debtor will be authorized to take all commercially reasonable and necessary steps to complete and implement the transaction contemplated by the Successful Bid, including (but not limited to) seeking entry of one or more sale orders.

**RELIEF REQUESTED**

A.    <u>Summary of Relief Requested</u>

8.    By this Motion, the Debtor is requesting the entry of two orders concerning sale of the Assets. First, the Debtor seeks entry of the Bidding Procedures Order as set forth above to provide for the orderly sale of the Assets. Second, the Debtor seeks the eventual entry of an order approving the sale that is the result of the Bidding Procedures set forth above, which may be incorporated into the Order confirming the Plan (the "<u>Sale Order</u>"). This relief requested by the Debtor is intended to provide for a competitive bidding and auction procedure for the Debtor's Assets to maximize value for the Debtor's estate, creditors, and other stakeholders as expeditiously as possible.

9.      Following entry of the Bidding Procedures Order, the Debtor will solicit bids, according to the Bidding Procedures, in hopes of receiving offers higher and better than the Stalking Horse Agreement. In the event one or more Qualified Bids are received prior to the Bid Deadline, the Debtor will hold an Auction at which it, in consultation with its secured creditors, will choose the party (the "Successful Bidder") with the highest and best bid (defined previously as the "Successful Bid") for the Assets.

10.      Following the Bid Deadline and after the Auction, if any, the Debtor will request the entry of an Order (a) approving the Sale of the Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, rights of set off, and interests thereon and there against, with the exception of "Permitted Encumbrances"[1] (collectively, the "Liens") (with such Liens attaching to the proceeds of the sale or sales), to the Successful Bidder and (b) authorizing the Debtor to assume and assign the Contracts and Leases other than those Contracts and Leases that may be excluded under any purchase agreement with any Successful Bidder (such Contracts and Leases to be assumed and assigned pursuant to a purchase agreement, the "Assumed and Assigned Contracts").

B.      The Bidding Procedures Order

11.      The Debtor desires to receive the greatest value possible for its Assets. The Bidding Procedures were developed to be consistent with permitting competing bids that will result in the highest and best offer (or offers) possible. In addition, these procedures reflect the

---

[1] The only Permitted Encumbrances of which the Debtor is currently aware is the Utah Department of Natural Resources, Division of Oil, Gas and Mining's interest in a cash surety deposit related to the mining operations of the Debtor and standard easements, rights-of-way, and the like over the Real Property.

Debtor's objective of conducting an Auction in a controlled, but fair and open, manner that promotes interest in the Debtor's Assets by financially-capable, motivated bidders who are likely to close a transaction, while simultaneously discouraging offers from persons the Debtor do not believe are sufficiently capable or likely to actually consummate a transaction.

12.     In the event Qualified Bids other than the One Smooth Stone bid are received, the Debtor proposes that an Auction of the Debtor's Assets will be held at a date fixed by the Court at the offices of Durham Jones & Pinegar, 111 E. Broadway, 9th Floor, Salt Lake City, Utah 84111, Telephone:  (801) 415-3000, Facsimile:  (801) 415-3500, or such other location determined by the Debtor, at which Auction the Debtor may select the highest and best Qualified Bid as a Successful Bid in accordance with the Bidding Procedures.  **ALL SALE(S) SHALL BE SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT.**

13.     One Smooth Stone, parties who submit Qualified Bids prior to the Bid Deadline, the Debtor, representatives of the Debtor's secured creditors, and the professionals of the foregoing, shall be entitled to attend and be heard at the Auction. Any creditors of the Debtor who wish to attend the Auction may do so but must give notice of their attendance to counsel to the Debtor in writing on or prior to the Bid Deadline. The Auction will be conducted in accordance with the Bidding Procedures.

14.     In the event that the Debtor has conducted an Auction or otherwise selected a Successful Bid in connection with the Bidding Procedures described above, the Sale Hearing shall be conducted by the Bankruptcy Court in connection with the hearing on confirmation of the Plan.

15.     Subject to Bankruptcy Court approval following the Auction, the Successful Bidder shall purchase the Assets, free and clear of all Liens, pursuant to the Motion and the corresponding order of the Court approving the Motion (the "Purchaser").

16.     Any sale of the Assets shall be without representation or warranties of any kind, nature or description by the Debtor, its agents or its estate, except as provided in the purchase agreement between the Debtor and the Purchaser. All of the Assets shall be transferred "as is," "where is" and "with all faults." **THE DEBTOR EXPRESSLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND MAKE NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE NATURE, QUALITY, VALUE OR CONDITION OF ANY ASSET.**

17.     Following the Sale Hearing approving the sale of the Assets to the Successful Bidder, if any such Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Next Highest Bid, as disclosed at the Sale Hearing, will be deemed to be the Successful Bid and the Debtor will be authorized, but not required, to consummate the sale with the Qualified Bidder submitting the Next Highest Bid without further order of the Bankruptcy Court. In such case, the Debtor specifically reserves the right to seek all available damages from the defaulting Successful Bidder.

18.     The Debtor submits that implementation of these Bidding Procedures will not chill the bidding, if any, for the Assets, especially given the Debtor's precarious financial situation and need to sell the Assets on an expedited basis.

19.     The Debtor proposes that the following dates be fixed, and that the Court shorten time as necessary to implement the following schedule:

a.      As the date for the Debtor to serve notice, not later than two business days from the date of the Court's order approving the Bidding Procedures.

b.      As the date for Initial Bids to be submitted the date which is not later than eighteen calendar days from the date of service of the foregoing notice.

c.      As the date for the Auction, if necessary, on the next business day following the deadline for Initial Bids.

d.      As the date for objections, if any, to the sale, not later than four (4) business days prior to the hearing on approval of the highest and best and any backup bids.

e.      As the date for the hearing on approval of the highest and best and any backup bids, the date when the Court will consider confirmation of the Plan.

C.      Assumption and Assignment of Leases and Contracts

20.      The Debtor believes that it is not in default under any of its Leases or Contracts other than the good faith agreement with Mercy Mountain, on which it owes several million dollars, and which is extremely unlikely to be cured, assumed, and assigned.  To facilitate the sale, assumption, and assignment of the Leases and Contracts, the Debtor proposes to serve the Assumption and Assignment Notice, as soon as practicable after the entry of the Bidding Procedures Order and requests that the Court permit approve the following procedure for fixing any cure amounts owed on the Leases and Contracts.

21.      All objections to the assumption and assignment of any Lease or Contract pursuant to section 365 of the Bankruptcy Code must: (a) identify the Lease or Contract to which the objector is party; and (b) describe with particularity any cure the claimant contends is

required under section 365 of the Bankruptcy Code and identify the basis(es) of the alleged cure claim under the Contract or Lease.

22.    If no objection is timely and properly filed and served in accordance with the Assigned Contract Objection Procedures, (a) the Cure Amount set forth in the Assumption and Assignment Notice shall be controlling notwithstanding anything to the contrary in any Contract or Lease or other document and the non-debtor party to the Contract or Lease shall be forever barred from asserting any other claim arising prior to the assignment against the Debtor or Purchaser as to such Contract or Lease if it is an Assigned Contract and (b) the Purchaser's promise to perform under the Contract or Lease shall be deemed Adequate Assurance under the Contract or Lease. To the extent the Debtor dispute any Cure Claim, such dispute shall be presented to the Court at the Sale Hearing, or such later date and time as the Debtor and the objector may agree or the Court may order, but such dispute shall not affect in any way the effectiveness of any assumption and assignment of a Contract or Lease.

23.    Unless the contract counterparty or any other entity properly files an objection to the supplemental Assumption and Assignment Notice within ten (10) calendar days of the date of the Assumption and Assignment Notice, the Debtor may assume and assign the Assumed and Assigned Contract, subject to the occurrence of the Closing, without further order or notice of hearing. If an objection is filed and served within ten (10) calendar days of the date of the supplemental Assumption and Assignment Notice, and the objection cannot be resolved consensually, then the Debtor will schedule a hearing to consider the objection on the next scheduled omnibus hearing date.

D.     Notice

24.     The Debtor proposes to give notice, immediately and not later than two business

days after the entry of the Bidding Procedures Order, of the Bidding Procedures, the Stalking

Horse Agreement, the Assumption and Assignment Notices, the time and place of the Auction,

the Sale Hearing, and the Objection Deadline. The Debtor further propose to give notice of the

Sale Hearing and the Objection Deadline by sending a Notice of Auction and Sale Hearing to

(i) all entities reasonably known to have expressed an interest in a transaction with respect to the

Assets during the past twelve months, (ii) all taxing authorities or recording offices which have a

reasonably known interest in the relief requested, (iii) the Office of the United States Trustee,

(iv) all non-debtor parties to relevant contracts or leases (executory or other), (v) all known

creditors of the Debtor, including all known persons asserting a lien, claim, encumbrance or

other interest in, to or against any of the Debtor's assets, and (vii) all parties who have requested

service pursuant to Bankruptcy Rule 2002.

E.     Objections

25.     The Debtor requests that the Court order that all objections to the sale of the

Assets, the assumption and assignment of the Assumed and Assigned Contracts, or any relief

requested in the Motion other than the relief granted by this Court in the Bidding Procedures

Order must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in

conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Clerk of the

Bankruptcy Court, 350 South Main Street, Salt Lake City, Utah 84101 by a date fixed by the

Court as set forth above, or other applicable deadline as indicated in this Motion; and (e) served

in accordance with the Local Rules so as to be received on or before the relevant objection

deadline by the following (collectively, the "Objection Notice Parties"): on the Debtor's counsel.

**BASIS FOR RELIEF**

A.     The Bidding Procedures Are Appropriate under the Circumstances

26.     A debtor may sell, after notice and a hearing, its assets outside the ordinary course

of business. 11 U.S.C. § 363. Generally, to obtain approval of a proposed sale of assets outside a

plan of reorganization, a debtor "must show (1) that a sound business reason exists for the sale;

(2) there has been adequate and reasonable notice to interested parties, including full disclosure

of the sale terms and the Debtor's relationship with the buyer; (3) that the sale price is fair and

reasonable; and (4) that the proposed buyer is proceeding in good faith." *See In re Medical*

*Software Solutions*, 286 B.R. 431, 440-41 (Bankr. D. Utah 2002).

27.     In this case, it is anticipated that the sale to a prospective purchaser will occur in

conjunction with the Plan.

28.     The Debtor submits that the foregoing bidding procedures and the opportunity for

competitive bidding embodied therein are reasonable and designed to make competing bids

possible, and should, therefore, be approved by this Court.

29.     Given the Debtor's current lack of liquidity, the Debtor believes that a prompt

sale process is the best way to maximize the value of the Assets for the benefit of the Debtor's

estate, creditors, and other stakeholders.

30.     Accordingly, the Debtor has concluded that: (a) a prompt sale of the Assets is the

best way to maximize value for its estates, and (b) the proposed Bidding Procedures described

herein are the most effective method of obtaining the highest and best offer for the Assets.

B.      Sale of the Assets Is a Product of the Debtor's Reasonable Business Judgment

31.     Section 363(b)(1) of the Bankruptcy Code provides: "[t]he Trustee, after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of

the estate." Section 105(a) of the Bankruptcy Code provides in relevant part: "The Court may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title."

32.     The proposed procedures for sales of the Debtor's Assets meet the requirements

established by *Medical Software Solutions* as to the "sound business reason" test. *See In re*

*Medical Software Solutions*, 286 B.R. 431, 440-41 (Bankr. D. Utah 2002).  First, sound business

purposes justify the proposed sale. The Debtor lacks funding, and has been unable to proceed

much with development of its properties.  A sale by auction, using reasonable procedures,

presents the best opportunity to realize the maximum value of the estate's assets for distribution

to creditors within the constraints imposed by the Debtor's circumstances.

33.     The Debtor has sought to establish procedures for notice to creditors, other

prospective bidders, and other parties in interest. Under the circumstances of this case, the

Debtor submits that the notice period proposed satisfies the requirements of the Bankruptcy

Rules, see Bankruptcy Rule 2002, and provides sufficient time for parties in interest to submit

objections to the proposed sale and for bidders to formulate and submit competing proposals.

34.     The proposed procedures for sales of the Debtor's assets satisfy the good faith

requirement for bankruptcy sales. The results of the Auction will be the product of good faith,

arm's length negotiations with respect to the price and other terms of the sales of the Debtor's

Assets between the Debtor and highest and best bidder at the conclusion of the Auction.  In

addition, the proposed procedures include appropriate consultation with major creditors.

35.     The Debtor has determined, in the exercise of its sound business judgment, that

the sale of the Debtor's assets to the highest and best bidder at the Auction is the best means to

maximize value for parties in interest. Accordingly, the Debtor requests that the Court approve

the proposed procedures for the sale of the Debtor's Assets to the highest or otherwise best

bidder at the Auction and approve the sale presented to the Court at the Sale Hearing.

C.     <u>Sale of the Assets Should Be Free and Clear of Liens</u>

36.     Pursuant to section 363(f) of the Bankruptcy Code, the Debtor seeks authority to

sell and transfer the Debtor's assets to the Purchaser free and clear of all Liens, with such Liens

to attach to the proceeds of the sale of the Debtor's Assets, subject to any rights and defenses of

the Debtor and other parties in interest with respect thereto. <u>The sale free and clear will not take</u>

<u>effect until the full Purchase Price has been received by the Debtor, although existing Liens will</u>

<u>attach to the proceeds of the sale as proceeds are received.  Payment of these proceeds will also</u>

<u>be made pursuant to the confirmed Plan.</u>  Section 363(f) of the Bankruptcy Code provides, in

pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and
> clear of any interest in such property of an entity other than the estate, only if –
>
> (1)     applicable nonbankruptcy law permits sale of such property free
>         and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be
>         sold is greater than the aggregate value of all liens on
>         such property;
>
> (4)     such interest is in bona fide dispute; or

      (5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

37.     A sale free and clear of Liens is necessary to maximize the value of the Debtor's Assets. A sale ultimately subject to Liens would result in a lower purchase price and be of substantially less benefit to the Debtor's estate.

38.     As adequate protection for Liens in, to, or against the Debtor's Assets that exist immediately prior to the closing of any sales, such Liens will (unless assumed by the Purchaser) attach to the sale proceeds with the same validity, priority, force, and effect as they had at such time, subject to the rights and defenses of the Debtor or any party in interest. Holders of Liens will be adequately protected by the availability of the proceeds of the Sale to satisfy their Liens and by the Liens remaining in place pending full payment of the Purchase Price by the Purchaser.  Further, the Debtor does not object to entry of an order providing that the sale proceeds be (a) held in a separate segregated account at interest consistent with Bankruptcy Code section 345; and (b) not be disbursed absent further order of the Court.  The Debtor anticipates that the Order confirming the Plan will constitute such an order of the Court authorizing payment.

39.     The sale proceeds provided for will exceed the aggregate value of all Liens on the Assets to be sold.  The sum of these amounts is greater than the sum of all claims secured by Liens against the Assets and, therefore, the Debtor also will have satisfied the price provision of Section 363(f)(3).

40.     Debtor anticipates that holders of Liens will either expressly consent to the sale or should be deemed to have consented (provided that the lienholder receives notice of the sale and fails to object), and therefore that Section 363(f)(2) will be satisfied.

41.     Further, in the event that any holders of Liens that are in bona fide dispute object to the sale, Section 363(f)(4) permits a sale free and clear of any interest that is in bona fide dispute.

D.     <u>Notice of the Proposed Sale Is Reasonable under the Circumstances</u>

42.     In this case, the Debtor is confronted with difficult and near-emergency circumstances with respect to its liquidity.  The DIP Loan will provide minimum funding for a short period. The proposed notice is appropriate under the circumstances.

E.     <u>The Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized</u>

43.     As set forth in the form of notice of assumption and assignment attached to the Plan, the Debtor proposes to assume and assign the SITLA Leases, which have been identified to date as leases which One Smooth Stone desires be assigned to it.  To the extent that the BLM Mining are leases or contracts, the Debtor will also assign the BLM Mining Claims to the Purchaser.

44.     Under Bankruptcy Code section 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an executory contract of a debtor.  This subsection provides:

(b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

45.    As explained by the Utah Bankruptcy Court, "What constitutes adequate assurance is a case-by-case determination, and a court can consider factors such as "(1) the debtor's payment history; (2) presence of a guarantee; (3) presence of a security deposit; (4) evidence of profitability; (5) a plan which would earmark money exclusively for the landlord; (6) the general outlook in the debtor's industry; and (7) whether the unexpired lease is at, or below, the prevailing rate."  *In re Athanasios III, LLC*, No. 10-32726, available at 2011 WL 30054, 2 (Bankr. D. Utah) (citations omitted).

46.      The Debtor believes that it is not in default under any Contracts or Leases other than the Mercy Mountain Agreement.  Cure of that Contracts is unlikely, given the significant amounts due under it unless Mercy Mountain agrees to waive or reduce cure amounts.

F.      <u>Waiver of Automatic 14-Day Stay Under Rules 6004(h) and 6006(d)</u>

47.      Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, all orders authorizing the assignment of contracts or unexpired leases are automatically stayed for fourteen days after entry of the order. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. <u>See</u> Advisory Committee Notes to Fed. R. Bankr. P. 6004(h); Advisory Committee Notes to Fed. R. Bankr. P. 6006(d).

48.      The Debtor does not anticipate objections to the sale that will involve any need for the automatic 14-day stay under either Rule 6004(h) or Rule 6006(d).  Under the circumstances of this case, the Debtor must close this sale promptly after all closing conditions have been met or waived so that the purchaser can immediately begin the process of commissioning the facilities and making final determinations necessary to complete the process.

### **<u>NOTICE</u>**

49.      Notice of this Motion has been provided to (i) the Office of the United States Trustee; (ii) counsel for secured creditors; and (iii) all parties who have requested notice in this case pursuant to Bankruptcy Rule 2002.

50.     In addition, notice of this Motion will be provided to (a) all parties who, postpetition, have indicated an interest in acquiring the Debtor's Assets.  These parties are being served with full copies of this Motion, with all exhibits.

51.     The Debtor will submit evidence of notice and, at the hearing on this Motion, will submit that notice of this Motion is sufficient and, further, that the additional notice provided to potential bidders as set forth in the foregoing paragraph further supports the proposed time periods for the submission of bids.

WHEREFORE, the Debtor respectfully requests that this Court (i) grant this Motion and the relief requested herein, first with respect to Bidding Procedures and related auction procedures, an Auction, if Qualified Bids are received; (ii) enter the proposed Bidding Procedures Order attached hereto, which includes the Bidding Procedures and related auction procedures and notice to be given; and (iii) grant such other and further relief as it deems just and proper.

DATED this 22nd day of April, 2016.

DURHAM JONES & PINEGAR, P.C.


By:  /s/  Kenneth L. Cannon II
      Kenneth L. Cannon II (3705)
      Penrod W. Keith (4860)

Attorneys for Cornerstone Industries, Inc.,
  the Debtor and Debtor in Possession

**CERTIFICATE OF SERVICE- BY NOTICE OF ELECTRONIC FILING (CM/ECF)**

I hereby certify that on April 22, 2016, I electronically filed the foregoing **DEBTOR'S MOTION FOR ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS IN CONNECTION WITH THE DEBTOR'S PLAN OF REORGANIZATION, APPROVING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, APPROVING BIDDING PROCEDURES AND OTHER PROCEDURES WITH RESPECT TO THE SALE AND THIS MOTION, AND GRANTING RELATED RELIEF** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users.

- Clay A Alger    clay@shumwayvan.com, meredith@shumwayvan.com
- Kenneth L. Cannon    kcannon@djplaw.com, khughes@djplaw.com
- Laurie A. Cayton tr    laurie.cayton@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Penrod W. Keith    pkeith@djplaw.com, khughes@djplaw.com
- John T. Morgan tr    john.t.morgan@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- R. Chad Pugh    chad.pugh@stoel.com,
  shirley.malouf@stoel.com;docketclerk@stoel.com
- Robert T Spjute    tee@shumwayvan.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Michael C. Van    michael@shumwayvan.com, clay@shumwayvan.com

/s/ Kristin Hughes

# EXHIBIT A

# ASSET PURCHASE AGREEMENT

**_____, 2016**

**Cornerstone Industries, Inc.**

**SELLER**

**One Smooth Stone, Inc.**

**BUYER**

**"Cornerstone Mining Project and Assets"**

# TABLE OF CONTENTS

ARTICLE I - RECITALS AND DEFINITIONS ............................................................1

    1.1    Incorporation by Reference........................................................................1

    1.2    Definitions....................................................................................................1

ARTICLE II - SALE OF ASSETS; CERTAIN RIGHTS OF SELLER ...........................3

    2.1    Purchase and Sale of the Assets ................................................................3

    2.2    Purchase Price and Consideration.............................................................3

            (a)    Purchase Price .................................................................3

    2.3    Certain Rights and Obligations of **Seller**.................................................4

            (a)    Bidding Procedures .........................................................4

ARTICLE III - DUE DILIGENCE......................................................................................4

    3.1    Due Diligence ..............................................................................................4

    3.2    Cooperation by **Seller** ...............................................................................4

    3.3    Confidentiality. ...........................................................................................4

            (a)    Disclosure of Confidential Information ...........................4

            (b)    Information Not Deemed Confidential .............................4

            (c)    Return or Destruction of Confidential Information ........5

    3.4    Material Event Notice; Termination; Cure Period Extension.....................5

ARTICLE IV - CLOSING.....................................................................................................5

    4.1    **Buyer's** Conditions of Closing..................................................................5

            (a)    No Material Events ...........................................................5

            (b)    Representations and Warranties .......................................5

            (c)    Condition of Assets..........................................................5

            (d)    No Circumstance of Material Adverse Effect .................5

            (e)    Marketable Title ...............................................................6

            (f)    **Seller's** Covenants .........................................................6

            (g)    Bankruptcy Court Approval .............................................6

            (h)    Bankruptcy Court Order ...................................................6

    4.2    **Seller's** Conditions of Closing..................................................................6

            (a)    Promissory Note................................................................6

            (b)    Representations and Warranties .......................................6

|  | (c) | **Buyer's** Covenants | 6 |
|  | (d) | Bankruptcy Court Approval | 6 |
| 4.3 | | Additional Conditions of Closing by **Buyer** and **Seller** | 6 |
|  | (a) | Necessary Consents | 6 |
|  | (b) | No Pending Claims | 7 |
|  | (c) | No Adverse Law | 7 |
| 4.4 | | Necessary Pre-Closing Activities. | 7 |
|  | (a) | Warranty Deed | 7 |
|  | (b) | Lease Assignment | 7 |
|  | (c) | Assignment, Bill of Sale and Conveyance | 7 |
|  | (d) | Transfer Documents to Be Held in Escrow Pending Final Payment. | 7 |
|  | (e) | Distribution of Proceeds of Sale and Continued Liens Until Full Payment of Purchase Price | 7 |
| 4.5 | | Closing | 7 |
| 4.6 | | Extension of Closing | 7 |
| 4.7 | | Operation of **Seller's** Business Pending Payment in Full of Purchase Price. | 7 |
| ARTICLE V - REPRESENTATIONS AND WARRANTIES | | | 8 |
| 5.1 | | Representations and Warranties of **Seller** | 8 |
|  | (a) | Authority | 8 |
|  | (b) | Binding Obligation | 8 |
| 5.2 | | Additional Representations of **Seller** | 8 |
|  | (a) | Organization, Conduct of Business, etc | 8 |
|  | (b) | Transfer of Real Property | 8 |
|  | (c) | Mortgages, Encumbrances and Liens | 8 |
|  | (d) | Title to and Condition of Assets | 8 |
|  | (e) | Litigation, Claims and Disputes | 8 |
|  | (f) | Compliance with Laws; Documentation | 9 |
|  | (g) | Employees and Employee Benefits | 9 |
|  | (h) | Environmental Matters | 9 |
| 5.3 | | Representations and Warranties of **Buyer** | 9 |
|  | (a) | Organization | 9 |

(b)    Authority ..................................................................................9

(c)    No Conflicts .............................................................................9

(d)    Execution .................................................................................9

(e)    Binding Obligation .................................................................10

(f)    Commissions ...........................................................................10

5.4    Further Representations and Assurances of **Buyer**. ..................10

(a)    Independent Examination .......................................................10

(b)    Risk .........................................................................................10

(c)    Project Viability .....................................................................10

ARTICLE VI - TERMINATION .........................................................................10

6.1    Termination ...........................................................................10

ARTICLE VII - NOTICES .................................................................................11

7.1    Notices ...................................................................................11

ARTICLE VIII - MISCELLANEOUS ................................................................12

8.1    Time is of the Essence ...........................................................12

8.2    Fees and Taxes .......................................................................12

8.3    Amendments ...........................................................................12

8.4    Preparation of Agreement ......................................................12

8.5    Headings .................................................................................12

8.6    Counterparts ...........................................................................12

8.7    Governing Law .......................................................................12

8.8    Entire Agreement ...................................................................12

8.9    Parties in Interest ...................................................................12

8.10   Remedies ................................................................................12

8.11   Disputes; Attorneys' Fees ......................................................13

8.12   Assignments ...........................................................................13

8.13   Severability ............................................................................13

8.14   Further Assurances .................................................................13

Exhibit A – Property and Assets
Exhibit B – Pre-Petition Claims
Exhibit C – Permitted Encumbrances
Exhibit D – Debtor-in-Possession Warranty Deed
Exhibit E – Lease Assignment
Exhibit F – Assignment, Bill of Sale and Conveyance

THIS ASSET PURCHASE AGREEMENT (the "Agreement") dated as of the ___day of _____, 2016, between One Smooth Stone, Inc. (hereinafter referred to as "**Buyer**") and Cornerstone Industries, Inc. (the "**Seller**"). The **Buyer** and each **Seller** are sometimes hereinafter referred to individually as a "**Party**" and collectively as the "**Parties**."

## RECITALS

A.      This Agreement sets forth the terms and conditions pursuant to which **Buyer** is to purchase and acquire free and clear title and ownership in and to the Assets except for Permitted Encumbrances. Capitalized terms or words are defined or described in this Agreement.

B.      On June 8, 2015 (the "Petition Date") the **Seller** filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. 101 et seq. with the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court") Case No. 15-26366;

C.      The **Seller** owes certain indebtedness to secured creditors who assert liens on some or all of the **Seller's** assets;

D.      Subject to its confirmation of **Seller's** representations and final approval of its Due Diligence, and subject to confirmation by the Bankruptcy Court, **Buyer** agrees to purchase and acquire the Assets and **Sellers** have agreed to sell all of the Assets to **Buyer** free and clear of all Claims except Permitted Encumbrances under the terms and conditions contained in this Agreement.

## AGREEMENT

NOW THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the **Parties** agree as follows:

## <u>ARTICLE I</u>

## RECITALS AND DEFINITIONS

1.1     <u>Incorporation by Reference</u>.  The foregoing Recitals are incorporated by this reference.

1.2     <u>Definitions</u>.

(a)      "ABS" means an Assignment, Bill of Sale, and Conveyance to be delivered by the **Seller** transferring to **Buyer**, or its designees or assigns, the Assets owned by the **Seller**;

(b)      "Agreement" means this Asset Purchase Agreement together with all Exhibits attached hereto;

(c)      "Assets" means the assets of the **Seller**, including the Mineral Leases, the Stockpile, the Mining Claims, the Reclamation Deposit, and Other Property;

(d)     "**Buyer's** Conditions of Closing" means those conditions set out in Section 4.1 below;

(e)     "Claims" means any legal, beneficial or other right or claim of any party that may be asserted or made in whole or in part against the Assets, whether or not asserted or made, in connection with any indebtedness, liability, or obligation of any kind whatsoever, and any interest accrued thereon or costs payable in respect thereof;

(f)     "Closing" means the completion of the Transaction as approved by the Bankruptcy Court whereby **Buyer** purchases the Assets from the **Seller** and **Seller** transfers the Assets to **Buyer** in accordance with the terms of this Agreement;

(g)     "Closing Date" means the date on which the Closing shall occur as agreed by **Buyer** and the **Seller,** which shall occur on or before _____, 2016;

(h)     "Confidential Information" means all documents and materials, whether in written, electronic, or any other form or media, related to the Assets;

(i)     "Creditor" means any person or company having a Claim against the Assets;

(j)      "Due Diligence" means any and all inspections, examinations, reviews, analyses, studies and related activities that **Buyer** deems necessary or appropriate involving the Assets;

(k)     "Due Diligence Period" means the period commencing as of the date hereof and concluding at 5:00 p.m. on _____, 2016, or such later date as is set in accordance with the provisions of this Agreement and approved by the Bankruptcy Court;

(l)     "*Force Majeure*" means if **Buyer** or **Seller** are prevented in good faith from complying with any of its obligations or performing any of the activities contemplated under this Agreement, or prevented or delayed from conducting any Due Diligence, by reason of fire, storm, flood, explosion, act of God; by reason of rebellion, insurrection or riot; or by reason of any other cause or causes beyond **Buyer's** or **Seller's** control or any operation of *Force Majeure* then, while so prevented, this Agreement shall not terminate in whole or in part and performance under this Agreement shall be temporarily excused.

(m)     "Prepetition Creditors" means those Creditors holding a Prepetition Claim;

(n)     "SITLA Leases" means those . . .;

(o)     "Lease Assignment" means the Lease Assignment assigning to **Buyer** all of **Seller's** leasehold rights and interests under and in connection with the SITLA Leases;

(p)     "Other Property" means all other property of the **Seller**, excluding the assets listed on Schedule _____ to this Agreement including (i) cash; (ii) claims and causes of action; and (iii) the Purchase Price;

(q)    "**Parties**" means collectively **Buyer** and **Seller**;

(r)    "Plan of Reorganization" means the Plan of Reorganization for **Seller**, as modified and amended, pursuant to which the Sale will be approved by the Bankruptcy Court and allowed claims of creditors of the **Seller** will be treated using the proceeds of the Sale;

(s)    "Purchase Price" means the amount described in Section 2.2(a) below;

(t)    "Project" means the Assets and related rights and interests involved in the mining project of **Seller** located in Iron County, Utah;

(u)    "Real Property" means the parcels of real property owned in fee simple by **Seller**;

(v)    "Sale Motion" means that certain motion filed by **Seller** with the Bankruptcy Court seeking approval of this Agreement and the sale of the Assets to **Buyer** on the Closing Date free and clear of liens, interests, and claims pursuant to Bankruptcy Code Section 363, as well as other matters, including bidding procedures (the "Bidding Procedures")

(w)    "**Seller's** Conditions of Closing" means those conditions set out in Section 4.2 below and as approved by the Bankruptcy Court;

(x)    "Warranty Deed" means a Debtor in Possession Warranty Deed granting to **Buyer** all of **Seller's** right, title, and interest in and to the Real Property;

(y)    "Transaction" means the purchase and sale of the Assets pursuant to this Agreement.

## **ARTICLE II**

## **SALE OF ASSETS; CERTAIN RIGHTS OF SELLER**

2.1    Purchase and Sale of the Assets. Subject to Article IV of this Agreement and approval of the Bankruptcy Court, **Seller** agree to convey, assign, and transfer to **Buyer** all right, title, and interest in the Assets, free and clear of all liens, interests and claims pursuant to Bankruptcy Code Section 363(f) against the Assets, including the Prepetition Claims, with liens, interests, and claims to the proceeds of sale with the same validity and priority such liens, interests and claims had on the Petition Date.  The transfer free and clear of all liens, interests, and claims will be final upon full payment of the Purchase Price.

2.2    Purchase Price and Consideration.

(a)    Purchase Price.  The Purchase Price and other consideration to be paid by **Buyer** in connection with **Buyer's** purchase and acquisition of the Assets shall be $3,000,000.00, payable over up to twelve months.  The Purchase Price money shall be paid by **Buyer**, over time, with payments averaging at least $250,000.

2.3     Certain Rights and Obligations of **Seller**.

(a)     Bidding Procedures.  The Bidding Procedures as approved by the Bankruptcy Court are incorporated herein by this reference.  The Bidding Procedures will provide a period of time for other potential bidders to submit higher and better offers and for **Buyer** to meet or exceed any such offers.

# ARTICLE III

## DUE DILIGENCE

3.1     Due Diligence.  **Buyer** shall be entitled to conduct Due Diligence during the Due Diligence Period in its sole discretion.  The specific **Seller** which is in possession of the applicable documents, materials or property shall provide **Buyer** reasonable access to all documents and records, including but not limited to, company books and records, title documents, permits, taxes, and all other information reasonably requested by **Buyer** which is available to or can be reasonably obtained by **Seller**. **Buyer** shall pay all reasonable out-of-pocket costs and expenses incurred by the specific **Seller** in connection with providing the foregoing Due Diligence materials requested by **Buyer**.

3.2     Cooperation by **Seller**.  **Seller** shall in good faith cooperate with **Buyer** in conducting **Buyer's** Due Diligence. Additionally, **Seller** shall provide **Buyer**, its attorneys, and consultants with access to the Assets, and each specific **Seller** which is in possession of documents related to the Assets shall also provide **Buyer**, upon **Buyer's** written request, with access to all available relevant and reasonably requested documentation at **Seller's** office in Salt Lake City, Utah, and when reasonably available, with access electronically by email or computer disc, during the Due Diligence Period.

3.3     Confidentiality.

(a)     Disclosure of Confidential Information.  The Confidential Information shall be deemed confidential, and shall not be disclosed to, or be permitted to be disclosed to, any third party by or through **Buyer**.

(b)     Information Not Deemed Confidential.  Confidential Information shall not include information:

(1)     known or disclosed to **Buyer** from a source other than **Seller**, which source is not under an obligation of confidentiality with respect to such information, prior to the effective date of this Agreement;

(2)     independently developed by or for **Buyer** and not using any Confidential Information, as evidenced by written records or other reasonable evidence;

(3)     acquired by **Buyer** from a third party which is not under an obligation of confidentiality with respect to such information;

(4)     which is or becomes generally available to the public other than as a result of a disclosure or by **Buyer**; or

(5)     which **Buyer** is required by law to disclose.

(c)     <u>Return or Destruction of Confidential Information</u>.  In the event the Transaction does not timely close, or is terminated in accordance with this Agreement prior to the Closing Date, **Buyer** shall be required to immediately return all Confidential Information to **Seller** together with all copies and versions thereof and/or **Buyer** shall be required to destroy or permanently erase such portions of the Confidential Information which are in written or electronic form.

3.4     <u>Material Event Notice; Termination; Cure Period Extension</u>.  In the event that during the Due Diligence Period, **Buyer** identifies a Material Event, it shall immediately provide **Seller** with written notice detailing such event.  If **Seller** cannot resolve or otherwise mitigate the applicable Material Event to the reasonable satisfaction of **Buyer** within ten (10) business days following the receipt of the aforementioned written notice (the "<u>Cure Period</u>"), this Agreement shall immediately terminate and be of no further force and effect unless, prior to the expiration of the Cure Period, **Buyer** has: (i) extended, in its sole option and in writing, the Cure Period by up to thirty (30) days (the "<u>Extended Cure Period</u>"); or (ii) has provided to **Seller** a written waiver releasing the condition to resolve the Material Event.

## <u>ARTICLE IV</u>

## CLOSING

4.1     **Buyer's** <u>Conditions of Closing</u>.  Notwithstanding any provision herein to the contrary, **Buyer** may, in its sole and absolute discretion and for any reason and at any time prior to Closing, elect not to consummate the Transaction contemplated by this Agreement and proceed with the Closing and terminate this Agreement. Without limiting the foregoing, **Buyer** will have the option to proceed with Closing subject to the following conditions:

(a)     <u>No Material Events</u>. There being no unresolved or unmitigated Material Event which is not acceptable to and waived by **Buyer**;

(b)     <u>Representations and Warranties</u>. The written satisfaction or written waiver of the condition that all representations and warranties of **Seller** contained in this Agreement shall be true in all material respects on the Closing Date;

(c)     <u>Condition of Assets</u>. The condition of the Assets shall not have deteriorated beyond ordinary wear and tear at the time of Closing;

(d)     <u>No Circumstance of Material Adverse Effect</u>. There will have been no change, effect or circumstance that is or has been materially adverse to, or could reasonably be expected to have a material adverse effect on the Assets or future commercial operations at the time of Closing;

(e)    <u>Marketable Title</u>. Good and marketable title to and possession of all Assets free and clear of all liens, interests, and claims pursuant to Bankruptcy Code Section 363(f), except Permitted Encumbrances, being conveyed, transferred and delivered to **Buyer** at Closing, including the receipt by the **Buyer** of an order of the Bankruptcy Court in form and substance acceptable to **Seller** which is satisfactory to **Buyer** in its good faith discretion;

(f)    **Seller's** <u>Covenants</u>. **Seller** having performed and satisfied all covenants and conditions required by this Agreement to be performed and satisfied by **Seller** at or prior to the Closing Date in all material respects;

(g)    <u>Bankruptcy Court Approval</u>.  Final approval of the Bankruptcy Court.

(h)    <u>Bankruptcy Court Order</u>.  The Bankruptcy Court having entered an order that meets **Buyer's** approval in form and substance finding that, among other things, **Buyer** is a good faith purchaser entitled to the protections of 11 U.S.C. § 363(m) and (n) and that **Seller** has the ability to sell the Assets free and clear of liens, interests and claims under 11 U.S.C. § 363(f).

4.2    **Seller's** <u>Conditions of Closing</u>.  The obligations of **Seller** to consummate the Transaction contemplated by this Agreement and proceed with the Closing are subject to the following conditions:

(a)    <u>Promissory Note</u>.  **Buyer** shall have delivered to **Seller** a promissory note (the "<u>Note</u>") for the full amount of any unpaid portion of the Purchase Price that is not paid at Closing.

(b)    <u>Representations and Warranties</u>. The written satisfaction or written waiver of the condition that all representations and warranties of **Buyer** contained in this Agreement shall be true in all material respects at and as of the date of Closing;

(c)    **Buyer's** <u>Covenants</u>. **Buyer** shall have performed and satisfied all covenants and conditions required by this Agreement to be performed and satisfied by **Buyer** in all material respects at or prior to the date of Closing; and

(d)    <u>Bankruptcy Court Approval</u>.  Final approval by the Bankruptcy Court.

4.3    <u>Additional Conditions of Closing by **Buyer** and **Seller**</u>. The obligations of **Buyer** and **Seller** to consummate the Transaction contemplated by this Agreement and proceed with the Closing are additionally subject, at the respective options of **Buyer** and **Seller**, to the satisfaction or written waiver by each such **Party**, of the following conditions:

(a)    <u>Necessary Consents</u>.  All necessary consents, permissions, and approvals, or amendments thereto, by governmental authorities, **Seller**, or other third parties (except consents, permissions, and approvals of governmental authorities customarily obtained subsequent to transfer) in connection with the sale and transfer by **Seller** and purchase by **Buyer** of the Assets shall have been obtained on behalf of or waived by the **Party** adversely affected, and all necessary regulatory filings shall have been made;

(b)     No Pending Claims.  Except for Permitted Encumbrances, at Closing there shall be no Claims against the Assets or any pending or instituted, threatened, or proposed, action or proceeding before any court or administrative agency or any other person challenging or complaining of, or seeking to collect damages or other relief in connection with the Transaction contemplated by this Agreement; and

(c)     No Adverse Law.  At Closing, no state or federal statute, rule, regulation, or action shall exist or shall have been adopted or taken, and no judicial or administrative decision shall have been entered (whether on a preliminary or final basis), which would prohibit the consummation of the Transaction contemplated by this Agreement or make illegal the payments due hereunder.

4.4     Necessary Pre-Closing Activities.

(a)     Warranty Deed.  At least two (2) days prior to Closing **Seller** shall deliver the duly executed and notarized Warranty Deed.

(b)     Lease Assignment.  At least two (2) days prior to Closing, **Seller** shall deliver the duly executed and notarized Lease Assignment.

(c)     Assignment, Bill of Sale and Conveyance.  At least two (2) days prior to Closing, **Seller** shall deliver a duly executed and notarized ABS.

(d)     Transfer Documents to Be Held in Escrow Pending Final Payment.  The Warranty Deed, Lease Assignment, and ABS shall be held in escrow by **Seller's** counsel or some other mutually acceptable party pending payment in full of the Purchase Price.

(e)     Distribution of Proceeds of Sale and Continued Liens Until Full Payment of Purchase Price.  Upon receipt of payments under the Note, **Seller** will distribute those payments as provided for in the Plan.  Pending full payment of the Purchase Price, liens, interests, and claims previously on the Assets, except for Permitted Encumbrances, will attach to such cash proceeds with the same validity and priority such liens, interests, and claims had prior to the Closing.  In addition, liens and other encumbrances shall remain on the Property pending full payment of the Purchase Price.

4.5     Closing.  The Closing shall occur on the Closing Date.

4.6     Extension of Closing.  The Closing Date may be extended by the mutual agreement of the **Parties** in writing and approved by the Bankruptcy Court.  The Closing Date may also be extended due to a Force Majeure event, but only if such event is a federal, or state law, or any order, rule, or regulation of a governmental authority.

4.7     Operation of **Seller's** Business Pending Payment in Full of Purchase Price.  Buyer will operate Seller's business pending full payment of the Purchase Price pursuant to license or contract, as agreed to by the **Parties**.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES

5.1    Representations and Warranties of **Seller**.  **Seller** represents and warrants to **Buyer** for and on behalf of itself, the following:

(a)    Authority.  Upon approval of the Bankruptcy Court, **Seller** has all requisite power and authority to enter into this Agreement and to perform its respective obligations hereunder.

(b)    Binding Obligation. This Agreement has been duly executed by, and delivered on behalf of **Seller**, and all documents and instruments required hereunder to be executed and delivered by **Seller** to **Buyer** will be duly executed and delivered. This Agreement constitutes the legal, valid, and binding obligation of Seller, enforceable in accordance with its terms and as approved by the Bankruptcy Court.

5.2    Additional Representations of **Seller**.  **Seller** represents and warrants to **Buyer** the following matters, all of which representations and warranties shall automatically expire at the end of twenty four (24) months after the date of the Closing:

(a)    Organization, Conduct of Business, etc.  **Seller** (i) is duly organized and validly existing and in good standing under the laws of the State of Utah, (ii) has all requisite power to own its properties, conduct its business as now being conducted, and complete the portions of the Transaction, (iii) is duly qualified to do business and is in good standing in Utah, and (iv) is not in any material respect transacting business in violation of any provision of federal or state law or any rule or regulation promulgated thereunder.

(b)    Transfer of Real Property.  **Seller** will convey to **Buyer** at the Closing via Warranty Deed, fee title to the Real Property. **Buyer** will acquire fee title to the Real Property, free and clear of all liens, interests and claims pursuant to Bankruptcy Code Section 363(f), except for the Permitted Encumbrances, upon full payment of the Purchase Price.

(c)    Mortgages, Encumbrances and Liens.  **Seller** has not sold, assigned, transferred, conveyed, leased, or otherwise disposed of or agreed to sell, assign, transfer, convey, lease, or otherwise dispose of the Real Property, or any of the other Assets owned by **Seller**, and there exist no Claims against the Real Property or the other Assets except the Prepetition Claims and the Permitted Encumbrances.

(d)    Title to and Condition of Assets.  **Seller** has good and marketable title in and to the Real Property and the other Assets, which, except for the Prepetition Claims and the Permitted Encumbrances, are free and clear of all Claims. **Seller** represents that it has not received and is not aware of any notice of violation of any applicable zoning regulation, ordinance, or other law, order, regulation, or requirement relating to the Assets owned by **Seller**.

(e)    Litigation, Claims and Disputes.  Except for the prepetition litigation brought by certain of the Secured Creditors, no claims, suits, actions, proceedings, or investigations exist or are pending against or affect **Seller** or the Assets, whether at law or in

equity, are pending, or, to **Seller's** knowledge, threatened before any court, arbitration panel or governmental agency.

(f)     Compliance with Laws; Documentation.  The conduct by **Seller** of its business does not violate or infringe any domestic or foreign laws, statues, ordinances, rules, or regulations, and **Seller** has complied with all applicable local, state, or federal laws, ordinances, rules and regulations now in effect and applicable to them.

(g)     Employees and Employee Benefits.  **Seller** does not have employees with benefit, compensation, or welfare benefit plans, programs, or agreements, nor is it required to contribute to any such plan. **Buyer** will have no obligation to make any contribution to and will not be subject to any liability under any existing benefit plan of **Seller**.

(h)     Environmental Matters.  **Seller** is and has at all times been in compliance with all applicable laws and regulations relating to pollution prevention and protection of the environment.

5.3     Representations and Warranties of **Buyer**.  **Buyer** represents and warrants to **Seller** the following:

(a)     Organization.  **Buyer** is a company, duly organized, validly existing and in good standing under the laws of Nevada.

(b)     Authority.  **Buyer** has all requisite power and authority to carry on its businesses as presently conducted.  **Buyer** has all necessary corporate power and authority to execute and deliver this Agreement and each of the other documents or instruments to which it is a party, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.

(c)     No Conflicts.  The execution and delivery by **Buyer** of this Agreement and each of the other documents and instruments to which **Buyer** is a party, do not, and the performance by **Buyer** of its obligations under this Agreement and each of the other documents and instruments and the consummation of the transactions contemplated hereby and thereby do not and will not (with or without notice or lapse of time or both), (i) violate any provision of the charter documents of **Buyer** or any law or order applicable to **Buyer** or any of its assets and properties such as to prevent **Buyer** from consummating the transactions contemplated by this Agreement or (ii) conflict with or result in a violation or breach of, constitute a default under (with or without notice or lapse of time or both), require **Buyer** to obtain any approval of, make any filing with or give any notice to any person as a result or under the terms of, or result in or give to any person any right of termination, cancellation, acceleration or modification in or with respect to, any contract to which **Buyer** is a party or by which any of the assets and properties of **Buyer** are bound that would prevent **Buyer** from consummating the transactions contemplated by this Agreement.

(d)     Execution.  The execution and delivery by **Buyer** of this Agreement and each of the other documents and instruments to which it is a party and the consummation by **Buyer** of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary action by **Buyer's** board of directors, or manager(s), as the case may

be, and no other action on the part of **Buyer's** board of directors is required to authorize the execution, delivery and performance of this Agreement or any of the other documents or instruments or the consummation by **Buyer** of the transactions contemplated hereby and thereby.

(e)      Binding Obligation.  This Agreement has been duly executed and delivered by or on behalf of **Buyer**; all documents and instruments required hereunder to be executed and delivered by **Buyer** herewith shall have been duly executed and delivered; and this Agreement does, and such documents and instruments shall, constitute legal, valid, and binding obligations of **Buyer** enforceable in accordance with their terms except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general equitable principles (whether considered in a proceeding at law or in equity).

(f)      Commissions.  **Buyer** has incurred no liability, contingent or otherwise, for Commissions relating to the Transaction contemplated by this Agreement for which **Seller** shall have any responsibility whatsoever.

5.4      Further Representations and Assurances of **Buyer**.

(a)      Independent Examination.  **Buyer** acknowledges that its decision to purchase and acquire all of the Assets pursuant to this Agreement will be made based solely upon **Seller's** representations and warranties made in this Agreement and **Buyer's** own Due Diligence examination and inspection of the Assets.  **Buyer** further acknowledges that it will rely solely and exclusively upon such representations and warranties and its Due Diligence to more fully investigate the advisability of the Transaction.

(b)      Risk.  **Buyer** is aware that its purchase of the Assets is speculative and subject to risk.  **Buyer** is capable of bearing the degree of economic risk including but not limited to the possibility of a complete loss of **Buyer's** investment.

(c)      Project Viability.  **Buyer** acknowledges that no certified or third party representation has been made by or on behalf of the **Seller** to **Buyer** as to projected revenue, yield, quantity of resources, future sales, or marketing conditions, valuation or appraisal value of the Real Property, or any other matters pertaining to the future viability of the Assets, the Project, or industry or market conditions.

## ARTICLE VI

## TERMINATION

6.1      Termination.  This Agreement shall be terminated and of no further force or effect in the event that the Closing does not occur on the Closing Date or it is terminated in accordance with Section 3.5 or 4.1 above; provided that, notwithstanding anything herein set forth to the contrary, the obligations of the **Parties** with respect to Confidential Information more particularly described herein shall survive any termination of this Agreement.

## ARTICLE VII

## NOTICES

7.1      <u>Notices</u>.  Any and all notices, elections and communications required or permitted by this Agreement shall be made or given in writing and shall be delivered (i) in person, (ii) sent next day delivery by a nationally recognized overnight courier such as FedEx or UPS, (iii) sent by facsimile or email, or (iv) sent by postage prepaid United States mail, certified or registered, return receipt requested, to the other **Parties** at the addresses set forth below, or such other address as may be furnished by notice in accordance with this section. The date of notice given by personal delivery shall be the date of such delivery. The effective date of notice by facsimile or email shall be the date of facsimile or email confirmation receipt and by mail shall be one (1) business day after the date such notice is deposited with a nationally recognized overnight courier or two business (2) days after the date such notice is deposited with the United States Postal Service.

If to **Seller**:

> Cornerstone Industries, Inc.
> P.O. Box 2740
> Cedar City, Utah  84721
> email:  lisaflippo@cornerstoneinsustriesinc.com

with a copy to:

> Kenneth L. Cannon II
> Durham Jones & Pinegar
> 111 East Broadway, #900
> Salt Lake City, Utah 84111
> email:  kcannon@djplaw.com

If to **Buyer**:

> One Smooth Stone, Inc.
> 1287 North Fairway Drive
> Cedar City, Utah   84721
> email: onesmoothstone50@gmail.com

with a copy to:

> Marc Ernaga
> Wilson Sonsini Goodrich & Rosati
> 650 Page Mill Road
> Palo Alto, CA 943041050
> email:  mernaga@wsgr.com

## ARTICLE VIII

## MISCELLANEOUS

8.1      Time is of the Essence.  **Seller** and **Buyer** expressly agree that time is of the essence for each and every provision of this Agreement.

8.2      Fees and Taxes.  Except as otherwise specifically provided, all fees, costs, expenses, and taxes incurred by **Seller** and **Buyer** in negotiating this Agreement or in conducting Due Diligence and consummating the Transaction contemplated by this Agreement shall be paid by the **Party** incurring the same, including without limitation, legal and accounting fees, costs, and expenses.

8.3      Amendments.  This Agreement may not be amended except by a written instrument signed by each of the **Seller** and by **Buyer** and approved by the Bankruptcy Court.

8.4      Preparation of Agreement.   **Seller** and **Buyer** and their respective legal counsel participated in the preparation and review of this Agreement. In the event of any ambiguity in this Agreement, no presumption shall arise in favor of any **Party**.

8.5      Headings.  The headings of the articles, paragraphs, and sections of this Agreement are for guidance and convenience of reference only and shall not limit or otherwise affect any of the terms or provisions of this Agreement.

8.6      Counterparts.  This Agreement may be executed by **Seller** and **Buyer** in any number of counterparts, each of which and a facsimile or PDF copy thereof, shall be deemed an original instrument, but all of which together shall constitute but one and the same instrument.

8.7      Governing Law.  This Agreement and the transactions contemplated hereby shall be construed in accordance with, and governed by, the laws of Utah without giving effect to the conflicts of laws rules. Any disputes concerning this Agreement or its subject matter shall be adjudicated in the Bankruptcy Court.

8.8      Entire Agreement.  Unless otherwise expressly agreed or acknowledged in writing by the **Party** to be charged, this Agreement, including any Exhibits hereto, constitutes the entire understanding of the **Parties** with respect to the subject matter hereof, superseding all negotiations, prior discussions and prior agreements and understandings relating to such subject matter.

8.9      Parties in Interest.  This Agreement shall be binding upon, and shall inure to the benefit of, the **Parties** and their respective heirs, successors and assigns. This Agreement is not intended to, and shall not, confer any rights or remedies upon any person other than the **Parties** and their respective successors and permitted designees or assigns.

8.10      Remedies. Each of the **Parties** hereby agrees that, in the event of a breach of this Agreement, the remedies at law available to **Sellers** or **Buyer**, as applicable, may be inadequate. In such event, the **Seller** or **Buyer**, as applicable, shall have the right, in addition to all other

rights and remedies, to specific performance and/or injunctive or other equitable relief (including rights of rescission) to enforce or prevent any violations by the other **Party** to this Agreement.

8.11   Disputes; Attorneys' Fees.  In any action arising out of this Agreement the prevailing **Party** shall be entitled to attorneys' fees and costs.  A **Party** shall be deemed the prevailing **Party** if the judgment is rendered in its favor or where the litigation is dismissed in its favor prior to or during the trial, unless the **Parties** otherwise agree in settlement or compromise.

8.12   Assignments.  This Agreement and the rights and obligations created hereunder may not be assigned by **Buyer** in whole or in part, without the prior written consent of **Seller** and the Bankruptcy Court, which consent shall not be unreasonably withheld.  The **Parties** expressly acknowledge and agree that One Smooth Stone may assign this Agreement and all of **Buyer's** rights and obligations hereunder to an entity formed by One Smooth Stone and its investors and partners to consummate the Transaction.  Upon such assignment, One Smooth Stone will have no liabilities, rights or obligations hereunder and **Seller** shall look solely to such assignee for the performance of **Buyer's** obligations hereunder.  Upon such assignment, **Buyer** shall notify the Observation Committee and shall provide such committee with reasonable evidence of the assignment and the assignee's assumption of **Buyer's** obligations under this Agreement.

8.13   Severability.  If a court of competent jurisdiction makes the final determination that any term or provision of this Agreement is invalid or unenforceable, all other terms and provisions shall remain in full force and effect and the invalid or unenforceable term or provision shall be deemed replaced by a term or provision that is valid and enforceable and comes closest to expressing the intention of the invalid term or provision.

8.14   Further Assurances.  As approved by the Bankruptcy Court, **Seller** and **Buyer** shall execute, acknowledge and deliver or cause to be executed, acknowledged and delivered, such documents, consents and instruments and take such other actions as may be necessary or advisable to confirm their respective obligations or rights under this Agreement and under any Exhibit, document, certificate or other instrument delivered pursuant hereto.

[The Remainder of this Page Intentionally Left Blank]

IN WITNESS WHEREOF, this Agreement has been executed effective as of the date first written above.

**SELLER**

CORNERSTONE INDUSTRIES, INC.

Dated: _____     By: _____

Its:

**BUYER**

ONE SMOOTH STONE, INC.

Dated: _____     By: _____

Its:

**EXHIBIT A**
to
**ASSET PURCHASE AGREEMENT**

**PROPERTY AND ASSETS**

**Real Property**

PARCEL 1:

THE EAST 68 ACRES OF SECTION 36, TOWNSHIP 32 SOUTH, RANGE 6 WEST, SALT LAKE BASE AND MERIDIAN LIES NORTH AND EAST HIGHWAY U-20.

LESS AND EXCEPTING THAT PORTION OF LAND DEED TO UDOT IN THAT CERTAIN WARRANTY DEED RECORDED SEPTEMBER 25, 2002 AS ENTRY NO. 454050, IN BOOK 820, AT PAGE 248 OF OFFICIAL RECORDS AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

A PARCEL OF LAND IN FEE FOR A HIGHWAY WIDENING, KNOWN AS PROJECT NO. SP-0020(1)0, BEING PART OF AN ENTIRE TRACT OF PROPERTY SITUATE IN THE SOUTHEAST ¼ OF THE SOUTHEAST ¼ OF SECTION 36, TOWNSHIP 32 SOUTH, RANGE 6 WEST, SALT LAKE BASE AND MERIDIAN, THE BOUNDARY OF SAID PARCEL OF LAND IS DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT LOCATED 133.607 M (438.34 FEET) NORTH AND 118.478 M (338.71 FEET) WEST FROM THE SOUTHEAST CORNER OF SAID SECTION 36, SAID POINT BEING ON THE NORTHEASTERLY RIGHT-OF-WAY LINE OF EXISTING STATE ROUTE 20 (SR-20) AND 22.201 M (72.84 FEET) RADIALLY DISTANT NORTHEASTERLY FROM THE CONTROL LINE OF SAID PROJECT AT ENGINEERS STATION 27+203,032; THENCE ALONG SAID RIGHT-OF-WAY LINE AROUND A 413.736 M (1357.40 FEET) RADIUS CURVE TO THE RIGHT AN ARC LENGTH OF 37.818 M (124.07 FEET), LONG CHORD OF WHICH BEARS SOUTH 39°22'19" EAST 37.805 M (124.03 FEET); THENCE LEAVING SAID RIGHT-OF-WAY LINE NORTH 48°00'34" EAST 18.288 M (60.00 FEET); THENCE ALONG A 395.448 M (1297.40 FEET) RADIUS CURVE TO THE RIGHT AN ARC LENGTH OF 36.147 M (118.59 FEET), LONG CHORD OF WHICH BEARS NORTH 39°22'19" WEST 36.134 M (118.55 FEET); THENCE SOUTH 53°14'48" WEST 18.288 M (60.00 FEET) TO THE POINT OF BEGINNING.

Tax Serial Number is C-0032-0001-0000

PARCEL 2:

THAT PORTION OF SECTION 36, TOWNSHIP 32, RANGE 6 WEST, SALT LAKE BASE AND MERIDIAN THAT LIES NORTH AND EAST OF HIGHWAY U-20.

LESS AND EXCEPTING THEREFROM THE EASTERNMOST 68 ACRES OF SAID PROPERTY THEREBY DESCRIBED.

ALSO LESS AND EXCEPTING THAT PORTION OF LAND DEED TO UDOT IN THAT CERTAIN SPECIAL WARRANTY DEED RECORDED NOVEMBER 4, 2002 AS ENTRY NO. 455773, IN BOOK 828, AT PAGE 215 OF OFFICIAL RECORDS AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

A PARCEL OF LAND IN FEE FOR A HIGHWAY WIDENING, KNOWN AS PROJECT NO. SP-0020(1)0, BEING PART OF AN ENTIRE TRACT OF PROPERTY SITUATE IN THE EAST ½ OF THE NORTHEAST ¼ , OF THE NORTHWEST ¼ AND THE NORTHWEST ¼ OF THE NORTHEAST ¼ SECTION 36, TOWNSHIP 32 SOUTH, RANGE 6 WEST, SALT LAKE BASE AND MERIDIAN, THE BOUNDARY OF SAID PARCEL OF LAND IS DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT LOCATED 1636.544 M (5369.24 FEET) NORTH AND 790.220 M (2592.59 FEET) WEST FROM THE SOUTHEAST CORNER OF SAID SECTION 36, SAID POINT BEING ON THE NORTHEASTERLY RIGHT-OF-WAY LINE OF EXISTING STATE ROUTE 20 (SR-20) AND 23.231 M (76.22 FEET) RADIALLY DISTANT NORTHEASTERLY FROM THE CONTROL LINE OF SAID PROJECT AT ENGINEER'S STATION 25+373.055; THENCE ALONG A 896.051 M (2939.80 FEET) RADIUS CURVE TO THE RIGHT AN ARC LENGTH OF 37.282 M (122.32 FEET), LONG CHORD OF WHICH BEARS SOUTH 40°01'32" EAST 37.280 M (122.31 FEET); THENCE LEAVING SAID RIGHT-OF-WAY LINE NORTH 51°09'59" EAST 13.716 M (45.00 FEET); THENCE ALONG A 909.767 M (2984.80 FEET) RADIUS CURVE TO THE LEFT AN ARC LENGTH OF 25.562 (83.86 FEET), LONG CHORD OF WHICH BEARS NORTH 39°38'18" WEST 25.561 M (83.86 FEET) TO THE NORTH LINE OF SAID SECTION 36; THENCE NORTH 89°10'56" WEST 18.355 M (60.22 FEET) ALONG SAID SECTION 36 TO THE POINT OF BEGINNING.

Tax Serial Number is C-0032-0001-0002

**SITLA Leases**

Metalliferous Minerals Lease nos. 52365 dated 2/1/2013 between Cornerstone Industries, Inc. and the Utah School and Institutional Trust Lands Administration, covering mineral rights for some or all of the real property described above.

Metalliferous Minerals Lease nos. 50377 dated 4/13/2012 between Cornerstone Industries, Inc. and the Utah School and Institutional Trust Lands Administration, covering mineral rights for some or all of the real property described above.

**<u>BLM Mining Claims</u>**

The following mining claims with the United States Bureau of Land Management (to the extent they are executory contracts and/or unexpired leases), to the extent not previously assumed:

UMC415965   DANNY BOY 1
UMC415966   DANNY BOY 2
UMC415967   DANNY BOY 3
UMC415968   DANNY BOY 4
UMC415969   DANNY BOY 5
UMC415970   DANNY BOY 6
UMC415971   DANNY BOY 7
UMC415972   DANNY BOY 8
UMC415973   DANNY BOY 9
UMC415974   DANNY BOY 10
UMC415975   DANNY BOY 11
UMC415976   DANNY BOY 12
UMC415977   DANNY BOY 13
UMC415978   DANNY BOY 14
UMC415979   DANNY BOY 15
UMC415980   DANNY BOY 16
UMC415981   DANNY BOY 17
UMC415982   DANNY BOY 18
UMC415983   DANNY BOY 19
UMC415984   DANNY BOY 20
UMC415985   DANNY BOY 21
UMC415986   DANNY BOY 22
UMC415987   DANNY BOY 23
UMC415988   DANNY BOY 24
UMC415989   DANNY BOY 25
UMC415990   DANNY BOY 26
UMC415991   DANNY BOY 27
UMC415992   DANNY BOY 28
UMC415993   DANNY BOY 29
UMC415994   DANNY BOY 30

**EXHIBIT B**
to
**ASSET PURCHASE AGREEMENT**


**PRE-PETITION CLAIMS**

| Claim No. | Creditor Name | Scheduled Claim Amount | Scheduled Claim Type | Proof of Claim Amount | Proof of Claim Type |
|---|---|---|---|---|---|
| 1 | Gregory A. Yoder, Trustee of the WebAgencies 401K | $500,000.00 | Secured | $633,312.00 | Secured |
| | | $1,200,000.00 | Unsecured | $1,111,000.00 | Unsecured |
| 2 | WebAgencies.com 401K | $180,000.00 | Secured | $279,709.77 | Secured |
| 3 | Mark Parelius | $100,000.00 | Secured | $506,666.00 | Secured |
| | | $300,000.00 | Unsecured | | |
| 4 | Sherri Kerr | $100,000.00 | Secured | $151,000.00 | Secured |
| | | $20,000.00 | Unsecured | | |
| 5 | Internal Revenue Service | | | $0.00 | Unsecured |
| 6 | Mark and Cynthia Heath | | | $500,000.00 | Secured |
| | | $1,000,000.00 | Unsecured | $105,000.00 | Unsecured |
| 7 | Gregory A. Yoder, Trustee of the WebAgencies 401K | | | $1,106,200.00 | Unsecured |
| 8 | Gregory A. Yoder, Trustee of the WebAgencies 401K | | | $633,312.00 | Unsecured |
| | Utah Dept of Natural Resources, Div. of Oil, Gas & Mining | $48,500.00 | Secured | | |
| | Audit and Tax Solutions | $3,000.00 | Unsecured | | |
| | Kingdom Industries, Inc. | $731,100.00 | Unsecured | | |
| | M.A. Munson Law | $4,400.00 | Unsecured | | |
| | Mercy Mountain Metals Inc. | $3,667,192.19 | Unsecured | | |
| | Vial Fotheringham, LLP | $5,277.00 | Unsecured | | |
| | Eric Flippo | $9,440.00 | Unsecured | | |

**EXHIBIT C**
**to**
**ASSET PURCHASE AGREEMENT**


**PERMITTED ENCUMBRANCES**


1.  Interest of  Utah Department of National Resources, Division of Oil, Gas and Mining in surety cash deposit of $48,500 to secure reclamation obligations related to the Seller's mining project.

2.  All easements, rights-of-way, servitudes, permits, telephone lines, power lines and other easements and rights-of-way, on, over, or in respect to the Real Property or other Assets, and any other encumbrances as set forth in title documentation provided to Buyer.

3.  Rights reserved to or vested in any municipality, governmental, statutory, or public authority to control or regulate the Real Property or other Assets in any manner, and all applicable laws, rules, and orders of governmental authorities.

**EXHIBIT D**
**to**
**ASSET PURCHASE AGREEMENT**

**DEBTOR IN POSSESSION WARRANTY DEED**

Cornerstone Industries, Inc., Grantor, of _____ (address), hereby conveys and warrants to One Smooth Stone, Inc. [or its assignee], Grantee, of_____, for the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency is hereby acknowledged, the following described tracts of land in Iron County, Utah, to wit:

(See Exhibit "A" attached hereto by this reference incorporated herein.)

together with all appurtenances, rights, and privileges belonging to the Property. The Special Warranty Deed is made pursuant to Utah Code, Section 57-1-12.5.

Dated effective _____ day of _____ 2016.

_____
(Signature Line of Grantor)

State of Utah              )
                             :ss
County of Salt Lake   )

The foregoing Special Warranty Deed was acknowledged before me on this _____ day of _____ 2016 by _____ as the _____ of Cornerstone Industries, Inc.

(Seal)

_____
Title:_____

My commission expires: _____

**EXHIBIT E**
**to**
**ASSET PURCHASE AGREEMENT**


**LEASE ASSIGNMENT**


**Assignment of SITLA Leases**


Cornerstone Industries, Inc., [address], hereinafter called Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby assign, transfer, sell and convey unto One Smooth Stone, Inc. located at _____, hereinafter called Assignee, all of its right, title and interest in and to the Metalliferous Minerals Lease dated February 1, 2013, and recorded as entry number _____ in Book _____, at Page ____ with the Iron County Recorder's office covering the following described land, to wit:


(See Exhibit "A" attached hereto by this reference incorporated herein.)


together with all of Assignor's rights incident thereto, and personal property thereon, appurtenant thereto, or used or obtained in connection therewith.

For the same consideration, the Assignor covenants with the Assignee, its heirs, successors, legal representatives and assigns that the Assignor is the lawful owner of and has good title to the interest herein assigned in and to said Lease, estate, rights and property, free and clear from any liens, encumbrances or adverse claims created by Assignor and has good right and authority to sell and convey the same, that said Lease is a valid and subsisting Lease on the lands above-described, and that all rentals and royalties due thereunder have been paid, and all conditions necessary to keep said Lease in full force and effect have been duly performed.


Dated this _____ day of _____ 2016.


CORNERSTONE INDUSTRIES, INC.


_____

By:  Eric Flippo
     President

State of _____ )

                                  ) ss.

County of _____ )

       The foregoing instrument was acknowledged before me on this ____ day of _____ 2016, by _____ as _____ of _____.

(Seal)

                                   _____

                                 Title: _____

            My commission expires: _____

**EXHIBIT F**
**to**
**ASSET PURCHASE AGREEMENT**


**ASSIGNMENT, BILL OF SALE AND CONVEYANCE**

This Assignment, Bill of Sale and Conveyance ("Conveyance") dated effective _____, 2016 is by and between Cornerstone Industries, Inc., [address], herein referred to as "Grantor," and One Smooth Stone, Inc., [address], hereinafter referred to as "Grantee", with Grantors and Grantee hereinafter sometimes being referred to jointly as "Parties."

WITNESSETH:

WHEREAS, Grantor is the owner of the Property and Assets listed on Schedule F-1 attached hereto and made a part hereof (the "Property").

WHEREAS, Grantor has agreed to assign, transfer and convey to Grantee, all of its right, title and interest in the Property to Grantee as set forth herein.

CONVEYANCE:

NOW, THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration received, the sufficiency of which is hereby acknowledged for all purposes, Grantor does hereby bargain, sell, transfer, assign and convey all of their right, title and interest in the Property to Grantee.

Grantor makes a special warranty of title only to Grantee as to matters by, through, and under Grantors but not otherwise.

THIS ASSIGNMENT IS BEING MADE WITHOUT WARRANTY OF ANY KIND, EXPRESS, IMPLIED IN FACT OR AT LAW, WHETHER OF TITLE OR REGULATORY OR OTHERWISE EXCEPT FOR A SPECIAL WARRANTY OF TITLE. GRANTOR EXPRESSLY DISCLAIMS ALL OTHER EXPRESS OR IMPLIED WARRANTIES.

GRANTOR EXPRESSLY DISCLAIMS AND NEGATES ANY WARRANTY AS TO THE CONDITION OF ANY PERSONAL PROPERTY, EQUIPMENT, FIXTURES AND ITEMS OF MOVABLE PROPERTY COMPRISING ANY PART OF THE ASSETS, IT BEING EXPRESSLY UNDERSTOOD THAT SAID PERSONAL PROPERTY, FIXTURES, EQUIPMENT, AND ITEMS ARE BEING CONVEYED TO GRANTEE "AS IS" AND "WHERE IS" AND WITHOUT WARRANTY OF MERCHANTABILITY, OPERATING CONDITION, SAFETY, CONDITION OR FITNESS FOR A PARTICULAR PURPOSE, COMPLIANCE WITH GOVERNMENTAL REGULATIONS, ENVIRONMENTAL, OR OTHER CONDITION OR OTHERWISE, EITHER EXPRESS OR IMPLIED.

This Conveyance is made subject to the terms and conditions of the following:

(a) Permitted Encumbrances identified in Schedule F-2 attached hereto and made a part hereof.

This Conveyance shall be binding upon, and shall inure to the benefit of, Grantor and Grantee and their respective successors and assigns.

This Conveyance may be executed in any number of counterparts, each of which shall be deemed an original instrument, but all of which together shall constitute but one and the same instrument.

IN WITNESS WHEREOF, this Assignment, Bill of Sale and Conveyance is executed on the respective dates indicated in the acknowledgments set forth below, but shall be effective as between the Parties for all purposes as of 12:01 A.M. Mountain Time on _____, 2016 (the "Effective Date").

"GRANTOR"

CORNERSTONE INDUSTRIES, INC.

_____

By: _____
Its: _____

"GRANTEE"

ONE SMOOTH STONE, INC.

_____

By: _____
Its: _____

State of _____ )
                           ) ss.
County of _____ )


The foregoing instrument was acknowledged before me on this ____ day of _____ 2016, by _____ as _____ of _____.


(Seal, if any)                    _____

                                  Title _____

My commission expires: _____

# SCHEDULE F-1

### PROPERTY AND ASSETS

**Real Property**

PARCEL 1:

THE EAST 68 ACRES OF SECTION 36, TOWNSHIP 32 SOUTH, RANGE 6 WEST, SALT LAKE BASE AND MERIDIAN LIES NORTH AND EAST HIGHWAY U-20.

LESS AND EXCEPTING THAT PORTION OF LAND DEED TO UDOT IN THAT CERTAIN WARRANTY DEED RECORDED SEPTEMBER 25, 2002 AS ENTRY NO. 454050, IN BOOK 820, AT PAGE 248 OF OFFICIAL RECORDS AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

A PARCEL OF LAND IN FEE FOR A HIGHWAY WIDENING, KNOWN AS PROJECT NO. SP-0020(1)0, BEING PART OF AN ENTIRE TRACT OF PROPERTY SITUATE IN THE SOUTHEAST ¼ OF THE SOUTHEAST ¼ OF SECTION 36, TOWNSHIP 32 SOUTH, RANGE 6 WEST, SALT LAKE BASE AND MERIDIAN, THE BOUNDARY OF SAID PARCEL OF LAND IS DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT LOCATED 133.607 M (438.34 FEET) NORTH AND 118.478 M (338.71 FEET) WEST FROM THE SOUTHEAST CORNER OF SAID SECTION 36, SAID POINT BEING ON THE NORTHEASTERLY RIGHT-OF-WAY LINE OF EXISTING STATE ROUTE 20 (SR-20) AND 22.201 M (72.84 FEET) RADIALLY DISTANT NORTHEASTERLY FROM THE CONTROL LINE OF SAID PROJECT AT ENGINEERS STATION 27+203,032; THENCE ALONG SAID RIGHT-OF-WAY LINE AROUND A 413.736 M (1357.40 FEET) RADIUS CURVE TO THE RIGHT AN ARC LENGTH OF 37.818 M (124.07 FEET), LONG CHORD OF WHICH BEARS SOUTH 39°22'19" EAST 37.805 M (124.03 FEET); THENCE LEAVING SAID RIGHT-OF-WAY LINE NORTH 48°00'34" EAST 18.288 M (60.00 FEET); THENCE ALONG A 395.448 M (1297.40 FEET) RADIUS CURVE TO THE RIGHT AN ARC LENGTH OF 36.147 M (118.59 FEET), LONG CHORD OF WHICH BEARS NORTH 39°22'19" WEST 36.134 M (118.55 FEET); THENCE SOUTH 53°14'48" WEST 18.288 M (60.00 FEET) TO THE POINT OF BEGINNING.

Tax Serial Number is C-0032-0001-0000

PARCEL 2:

THAT PORTION OF SECTION 36, TOWNSHIP 32, RANGE 6 WEST, SALT LAKE BASE AND MERIDIAN THAT LIES NORTH AND EAST OF HIGHWAY U-20.

LESS AND EXCEPTING THEREFROM THE EASTERNMOST 68 ACRES OF SAID PROPERTY THEREBY DESCRIBED.

ALSO LESS AND EXCEPTING THAT PORTION OF LAND DEED TO UDOT IN THAT CERTAIN SPECIAL WARRANTY DEED RECORDED NOVEMBER 4, 2002 AS ENTRY NO. 455773, IN BOOK 828, AT PAGE 215 OF OFFICIAL RECORDS AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

A PARCEL OF LAND IN FEE FOR A HIGHWAY WIDENING, KNOWN AS PROJECT NO. SP-0020(1)0, BEING PART OF AN ENTIRE TRACT OF PROPERTY SITUATE IN THE EAST ½ OF THE NORTHEAST ¼ , OF THE NORTHWEST ¼ AND THE NORTHWEST ¼ OF THE NORTHEAST ¼ SECTION 36, TOWNSHIP 32 SOUTH, RANGE 6 WEST, SALT LAKE BASE AND MERIDIAN, THE BOUNDARY OF SAID PARCEL OF LAND IS DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT LOCATED 1636.544 M (5369.24 FEET) NORTH AND 790.220 M (2592.59 FEET) WEST FROM THE SOUTHEAST CORNER OF SAID SECTION 36, SAID POINT BEING ON THE NORTHEASTERLY RIGHT-OF-WAY LINE OF EXISTING STATE ROUTE 20 (SR-20) AND 23.231 M (76.22 FEET) RADIALLY DISTANT NORTHEASTERLY FROM THE CONTROL LINE OF SAID PROJECT AT ENGINEER'S STATION 25+373.055; THENCE ALONG A 896.051 M (2939.80 FEET) RADIUS CURVE TO THE RIGHT AN ARC LENGTH OF 37.282 M (122.32 FEET), LONG CHORD OF WHICH BEARS SOUTH 40°01'32" EAST 37.280 M (122.31 FEET); THENCE LEAVING SAID RIGHT-OF-WAY LINE NORTH 51°09'59" EAST 13.716 M (45.00 FEET); THENCE ALONG A 909.767 M (2984.80 FEET) RADIUS CURVE TO THE LEFT AN ARC LENGTH OF 25.562 (83.86 FEET), LONG CHORD OF WHICH BEARS NORTH 39°38'18" WEST 25.561 M (83.86 FEET) TO THE NORTH LINE OF SAID SECTION 36; THENCE NORTH 89°10'56" WEST 18.355 M (60.22 FEET) ALONG SAID SECTION 36 TO THE POINT OF BEGINNING.

Tax Serial Number is C-0032-0001-0002

**SITLA Leases**

Metalliferous Minerals Lease nos. 52365 dated 2/1/2013 between Cornerstone Industries, Inc. and the Utah School and Institutional Trust Lands Administration, covering mineral rights for some or all of the real property described above.

Metalliferous Minerals Lease nos. 50377 dated 4/13/2012 between Cornerstone Industries, Inc. and the Utah School and Institutional Trust Lands Administration, covering mineral rights for some or all of the real property described above.

## BLM Mining Claims

The following mining claims with the United States Bureau of Land Management (to the extent they are executory contracts and/or unexpired leases), to the extent not previously assumed:

UMC415965   DANNY BOY 1
UMC415966   DANNY BOY 2
UMC415967   DANNY BOY 3
UMC415968   DANNY BOY 4
UMC415969   DANNY BOY 5
UMC415970   DANNY BOY 6
UMC415971   DANNY BOY 7
UMC415972   DANNY BOY 8
UMC415973   DANNY BOY 9
UMC415974   DANNY BOY 10
UMC415975   DANNY BOY 11
UMC415976   DANNY BOY 12
UMC415977   DANNY BOY 13
UMC415978   DANNY BOY 14
UMC415979   DANNY BOY 15
UMC415980   DANNY BOY 16
UMC415981   DANNY BOY 17
UMC415982   DANNY BOY 18
UMC415983   DANNY BOY 19
UMC415984   DANNY BOY 20
UMC415985   DANNY BOY 21
UMC415986   DANNY BOY 22
UMC415987   DANNY BOY 23
UMC415988   DANNY BOY 24
UMC415989   DANNY BOY 25
UMC415990   DANNY BOY 26
UMC415991   DANNY BOY 27
UMC415992   DANNY BOY 28
UMC415993   DANNY BOY 29
UMC415994   DANNY BOY 30

Wells Fargo Bank, Acct # XXXXXX2127

Reclamation Cash Surety Deposit with Utah Department of Natural Resources

Claims against AGR Minerals Private Capital Group and JHO Mutual for Failure to Transfer Assets Purchased by Debtor and for Failure to Maintain Current Status of Mineral Leases Purchased or Assigned to the Debtor, which Resulted in Delays in Development by the Debtor and Required the Debtor to Obtain Reinstatement or Reissuance of Mineral Leases

Approx. 80,000 Tons of Extracted Ore Stockpiled on Debtor's Real Property as to which the Debtor has the Right to Sell and Process

# SCHEDULE F-2

### PERMITTED ENCUMBRANCES

1.  Interest of Utah Department of National Resources, Division of Oil, Gas and Mining in surety cash deposit of $48,500 to secure reclamation obligations related to the Seller's mining project.

2.  All easements, rights-of-way, servitudes, permits, telephone lines, power lines and other easements and rights-of-way, on, over, or in respect to the Real Property or other Assets, and any other encumbrances as set forth in title documentation provided to Buyer.

3.  Rights reserved to or vested in any municipality, governmental, statutory, or public authority to control or regulate the Real Property or other Assets in any manner, and all applicable laws, rules, and orders of governmental authorities.

# EXHIBIT B

Kenneth L. Cannon II (3705)
Penrod W. Keith (4860)
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P O Box 4050
Salt Lake City, UT  84110-4050
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
Email:  kcannon@djplaw.com
      pkeith@djplaw.com

Attorneys for the Cornerstone Industries, Inc.,
  Debtor and Debtor in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 15-26366 |
| CORNERSTONE INDUSTRIES, INC., | Chapter 11 |
| Debtor. | Honorable William T. Thurman |

## ORDER (A) APPROVING (I) BIDDING PROCEDURES, (II) AUCTION PROCEDURES; AND (III) ASSUMPTION AND ASSIGNMENT PROCEDURES; (B) APPROVING NOTICE PROCEDURES FOR (I) THE SOLICITATION OF BIDS, (II) AN AUCTION; (C) SCHEDULING HEARING ON APPROVAL OF A SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; AND (D) GRANTING RELATED RELIEF

The Motion of Cornerstone Industries, Inc., as debtor in possession in this case (the

"Debtor"), pursuant to sections 105(a) and 363(b), (f), and (m), and 365 of title 11 of the United

States Code (the "Bankruptcy Code") and rules 2002, 6004, 6006, and 9014 of the Federal Rules

of  Bankruptcy Procedure (the "Bankruptcy Rules"), for an Order, *inter alia*, approving

(1) bidding and auction procedures related to the proposed sale of assets and the assumption and

assignment of unexpired leases and executory contracts, (2) approving notice for the solicitation

of bids and an auction, (3) scheduling a hearing on the sale of substantially all of the Debtor's

assets, and (4) granting related relief; and no other or further notice hereof being necessary or

required; and it appearing to the Court that based upon the representations contained in the

Motion, that the issuance of this Order is in the best interest of the Debtor, its estate and

creditors, and after due deliberation and good and sufficient cause appearing therefor, it is hereby

ORDERED:

1.      Except as expressly provided herein, nothing herein shall be construed as a

determination of the rights of any party in interest in this Chapter 11 case.

2.      All capitalized terms not otherwise defined in this Order have the meanings

ascribed to such terms in the Motion.

3.      The Bidding Procedures set forth in the Motion are hereby authorized, approved,

and made part of this Order as if fully set forth herein. The Debtor is authorized to conduct a sale

by auction (the "Auction") of the Debtor's assets (the "Assets") pursuant to the Bidding

Procedures and the terms of this Order.

4.      All objections to the Motion or the relief requested therein (and all reservations of

rights included therein), as it pertains to the entry of this Order, are overruled to the extent they

have not been withdrawn, waived or otherwise resolved.

5.      The Debtor is authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements established by this Order.

6.      Subject to the final determination of this Court, the Debtor is authorized, in compliance with the Bidding Procedures regarding the requirements for a Qualified Bid, to (a) determine which of the Initial Bids submitted prior to the Auction and the bids made at the Auction is the highest or otherwise best offer at each stage of these procedures, and (b) properly reject any and all Initial Bids or bids at the Auction that, in the Debtor's discretion are (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, or the terms and conditions of the Sale, or the terms of this Order, are hereby authorized, approved, and made part of this Order as if fully set forth herein. The Debtor is authorized to conduct an Auction of the Debtor's Assets.

7.      On _____, 2016, at _____, Mountain Time or as soon thereafter as counsel may be heard, the Sale Hearing will be held before the Honorable William T. Thurman, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Utah, 350 South Main Street, Salt Lake City, Utah 84101, in connection with the hearing to consider confirmation of the Debtor's Plan of Reorganization dated March 18, 2016, to consider the issuance and entry of an order, inter alia, approving the Sale of the Assets of the Debtor free and clear of all Liens as set forth in the Sale Motion. The Debtor may adjourn the Sale Hearing one or more times without further notice by making an announcement in open Court or by the filing of a hearing agenda announcing the adjournment.

8.      Notice as proposed in the Sale Motion is approved.

9.      Within two (2) business days after the entry of this Order (the "Mailing Date"),

the Debtor shall give notice of the Bidding Procedures, the Stalking Horse Agreement, the

Assumption and Assignment Notice, the time and place of the Auction, the Sale Hearing, and the

Objection Deadline. The Debtor further propose to give notice of the Sale Hearing and the

Objection Deadline by sending a Notice of Auction and Sale Hearing to (i) all entities reasonably

known to have expressed an interest in a transaction with respect to the Assets during the past

twelve months, (ii) all taxing authorities or recording offices which have a reasonably known

interest in the relief requested, (iii) the Office of the United States Trustee, (iv) all non-debtor

parties to relevant contracts or leases (executory or other), (v) all known creditors of the Debtor,

including all known persons asserting a lien, claim, encumbrance or other interest in, to or

against any of the Debtor's assets, and (vii) all parties who have requested service pursuant to

Bankruptcy Rule 2002.

10.     All objections to the sale of the Assets, the assumption and assignment of the

Assumed and Assigned Contracts, or any relief requested in the Motion other than the

relief granted by this Court in the Bidding Procedures Order must be: (a) in writing; (b) signed

by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and

the Local Rules; (d) filed with the Clerk of the Bankruptcy Court, 350 South Main Street, Salt

Lake City, Utah 84101; and (e) served in accordance with the Local Rules so as to be received

on or before the relevant objection deadline by the following (collectively, the "Objection Notice

Parties") on the Debtor's counsel.

11.     As provided by Bankruptcy Rule 7062, this Order shall be effective and

enforceable immediately. The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the

effectiveness of this Order for fourteen days are hereby waived, and this Order shall be effective

immediately upon entry of this Order.

* * * * * END OF DOCUMENT * * * * *

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing ORDER (a) APPROVING (i) BIDDING PROCEDURES, (II) AUCTION PROCEDURES; AND (III) ASSUMPTION AND ASSIGNMENT PROCEDURES; (B) APPROVING NOTICE PROCEDURES FOR (I) THE SOLICITATION OF BIDS, (II) AN AUCTION; (C) SCHEDULING HEARING ON APPROVAL OF A SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; AND (D) GRANTING RELATED RELIEF shall be served to the parties and in the manner designated below:

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users.

- Clay A Alger    clay@shumwayvan.com, meredith@shumwayvan.com
- Kenneth L. Cannon    kcannon@djplaw.com, khughes@djplaw.com
- Laurie A. Cayton tr    laurie.cayton@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Penrod W. Keith    pkeith@djplaw.com, khughes@djplaw.com
- John T. Morgan tr    john.t.morgan@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- R. Chad Pugh    chad.pugh@stoel.com,
  shirley.malouf@stoel.com;docketclerk@stoel.com
- Robert T Spjute    tee@shumwayvan.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Michael C. Van    michael@shumwayvan.com, clay@shumwayvan.com

_____